1 | **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2 | Name ___JEROME THOMAS II___

$\qquad$ (Last) $\qquad$ (First) $\qquad$ (Initial)

3

4 | Prisoner Number ___C-42636___

Institutional Address ____N/A --PAROLEE___

5

FILED

AUG 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6

MHP

7 | ### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

8 | ___JEROME THOMAS II___

(Enter the full name of plaintiff in this action.)

9

10 | vs.

11 | ___CALIFORNIA BOARD OF PAROLE HEARING___

12

13

14 | (Enter the full name of respondent(s) or jailor in this action)

15

CV 08 3901

Case No. _____
(To be provided by the clerk of court)

**PETITION FOR A WRIT
OF HABEAS CORPUS**

E-filing

(PR)

16 | Read Comments Carefully Before Filling In

17 | When and Where to File

18 | You should file in the Northern District if you were convicted and sentenced in one of these

19 | counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 | San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 | this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 | good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23 | If you are challenging your conviction or sentence and you were not convicted and sentenced in

24 | one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 | District Court for the district in which the state court that convicted and sentenced you is located. If

26 | you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 | your petition will likely be transferred to the district court for the district that includes the institution

28 | where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS $\qquad$ - 1 -

1 | Who to Name as Respondent

2      You must name the person in whose actual custody you are. This usually means the Warden or

3 jailer. Do not name the State of California, a city, a county or the superior court of the county in which

4 you are imprisoned or by whom you were convicted and sentenced. These are not proper

5 respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7 but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8 custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9 was entered.

10 | A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11     1. What sentence are you challenging in this petition?

12        (a)   Name and location of court that imposed sentence (for example; Alameda

13            County Superior Court, Oakland):

14         ALAMEDA COUNTY SUPERIOR COURT     OAKLAND, CA

15          Court                      Location

16        (b)   Case number, if known ____ 69783

17        (c)   Date and terms of sentence  01/08/82 -- 15 YEARS TO LIFE

18        (d)   Are you now in custody serving this term? (Custody means being in jail, on

19            parole or probation, etc.)          Yes x    No _____

20            Where?

21            Name of Institution: ___ PAROLEE

22            Address: ___ N/A

23     2. For what crime were you given this sentence? (If your petition challenges a sentence for

24 more than one crime, list each crime separately using Penal Code numbers if known. If you are

25 challenging more than one sentence, you should file a different petition for each sentence.)

26   CALIFORNIA PENAL CODE §187 --SECOND DEGREE MURDER

27

28

PET. FOR WRIT OF HAB. CORPUS    - 2 -

1    3. Did you have any of the following?

2        Arraignment:                              Yes _X_        No _____

3        Preliminary Hearing:                      Yes _X_        No _____

4        Motion to Suppress:                       Yes _____      No _____

5    4. How did you plead?

6        Guilty _____    Not Guilty _X_    Nolo Contendere _____

7        Any other plea (specify) _____N/A_____

8    5. If you went to trial, what kind of trial did you have?

9        Jury _X_    Judge alone_____    Judge alone on a transcript _____

10   6. Did you testify at your trial?              Yes _X_        No _____

11   7. Did you have an attorney at the following proceedings:

12       (a)    Arraignment                         Yes _X_        No _____

13       (b)    Preliminary hearing                 Yes _X_        No _____

14       (c)    Time of plea                        Yes _X_        No _____

15       (d)    Trial                               Yes _X_        No _____

16       (e)    Sentencing                          Yes _X_        No _____

17       (f)    Appeal                              Yes _X_        No _____

18       (g)    Other post-conviction proceeding    Yes _____      No _____

19   8. Did you appeal your conviction?             Yes _X_        No _____

20       (a)    If you did, to what court(s) did you appeal?

21              Court of Appeal                      Yes _X_        No _____

22              Year: _1983_    Result:_____DENIED_____

23              Supreme Court of California          Yes _X_        No _____

24              Year: _1983_    Result:_____DENIED_____

25              Any other court                      Yes _____      No _X_

26              Year: _____    Result:_____

27

28       (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS          - 3 -

1    petition?                                    Yes _____    No_X_____

2    (c)    Was there an opinion?                 Yes _____    No_ X __

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                 Yes _____    No_ X __

5           If you did, give the name of the court and the result:

6    _____

7    _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?           Yes _x___    No_____

10           [Note:  If you previously filed a petition for a writ of habeas corpus in federal court that

11    challenged the same conviction you are challenging now and if that petition was denied or dismissed

12    with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13    for an order authorizing the district court to consider this petition.  You may not file a second or

14    subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28

15    U.S.C. §§ 2244(b).]

16    (a)    If you sought relief in any proceeding other than an appeal, answer the following

17           questions for each proceeding.  Attach extra paper if you need more space.

18    I.     Name of Court: __ ALAMEDA  SUPERIOR  COURT _____

19           Type of Proceeding: _HABEAS  CORPUS _____

20           Grounds raised (Be brief but specific):

21           a._ DUE  PROCESS--EXCESSIVE  RETENSION  ON  PAROLE ____

22           b._____

23           c._____

24           d._____

25           Result: __DENIED _____ Date of Result: 09/14/07

26    II.    Name of Court: _CALIFORNIA  COURT  OF  APPEAL _____

27           Type of Proceeding: _____ HABEAS  CORPUS _____

28           Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS        - 4 -

1           a. DUE PROCESS --EXCESSIVE RENTENTION ON PAROLE

2           b._____

3           c._____

4           d._____

5           Result: DENIED_____Date of Result: 12/06/07

6      III.   Name of Court: __CALIFORNIA SUPREME COURT_____

7           Type of Proceeding: __HABEAS CORPUS_____

8           Grounds raised (Be brief but specific):

9           a.__DUE PROCESS -- EXCESSIVE RENTENTION ON PAROLE

10          b._____

11          c._____

12          d._____

13          Result: _____DENIED_____Date of Result: 07/16/08

14     IV.   Name of Court: _____

15          Type of Proceeding: _____

16          Grounds raised (Be brief but specific):

17          a._____

18          b._____

19          c._____

20          d._____

21          Result: _____Date of Result:_____

22   (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                  Yes _____    No X

24          Name and location of court: _____

25 **B. GROUNDS FOR RELIEF**

26     State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS     - 5 -

1   need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5      Claim One: PETITIONER HAS EXCEEDED HIS TOTAL TERM.

6

7      Supporting Facts:   PLEASE SEE ATTACHED PETITION.

8

9

10

11     Claim Two:

12

13     Supporting Facts:

14

15

16

17     Claim Three:

18

19     Supporting Facts:

20

21

22

23      If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25   N/A

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1         List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    PLEASE SEE ATTACHED PETITION

5    

6    

7    Do you have an attorney for this petition?                    Yes_____     No_ X_

8    If you do, give the name and address of your attorney:

9    

10       WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12   

13   Executed on _August 13, 2008_                    _____

14              Date                                       Signature of Petitioner

20   (Rev. 6/02)

PET. FOR WRIT OF HAB. CORPUS          - 7 -

Jerome Thomas II
7805 Sanford Street
Oakland, CA 94605

Pro se Litigant


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


In re Jerome Thomas II                           CASE NO.

                                                 **PETITION FOR WRIT OF HABEAS
                                                 CORPUS AND MEMORANDUM OF
        **v.**                                   POINTS AND AUTHORITIES IN
                                                 SUPPORT THEREOF**

California Board Of Parole Hearings
_____/


**PETITIONER JEROME THOMAS II ALLEGES AS FOLLOWS:**

**I**

**FACTUAL BACKGROUND**

1. Petitioner Jerome Thomas II, alleges that he is illegally restrained of his liberty by the

California Department of Corrections and Rehabilitation and the California Board of Parole

Hearings. Petitioner is so restrained as a result of excessive retention on parole after completing

an indeterminate term of 15 years-to-life for second degree murder, imposed January 8th, 1982,

by the Superior Court of California in the County of Alameda, Case No. 69783, the Hon. Joseph

Karesh presiding.

1

2. On January 12th, 2006, Mr. Thomas appeared at his 13th parole consideration hearing before a two member hearing panel of the Board of Parole Hearings. The panel reached a unanimous decision as to Petitioner's parole suitability. In making their determination that Petitioner was eligible for parole the panel assessed a based term of imprisonment of 228 months, or 19 years. (See Transcripts of Board Decision Attached As Exhibit A)

3. On June 9th, 2006, the Governor reviewed and reversed the Board's suitability finding and on December 28, 2006, Petitioner was released to parole via an order granting his petition for writ of habeas corpus filed in the United States District Court, Northern District of California, Case No. C05-1332 MHP (PR). At the time of his release Mr. Thomas had served more than 299 months, or 24 years and 11 months in physical custody. Additionally, Mr. Thomas has served 20 months on parole which amounts to 320 months, or more than 26 years of custody credits. (See Transcripts of Board Decision Attached As Exhibit A & Order Granting Habeas Petition Attached As Exhibit B)

4. Under California law the Board, in setting the release date for an indeterminate sentence, performs the same function as does the trial court in ordering a determinate sentence--it fixes a term of definite duration. Penal Code §1170, subdivision (a) (3), specifies in the case of a prisoner serving a determinate term, "[t]he court shall advise the defendant that he or she shall serve a period of parole and order the defendant to report to the parole office closest to the defendant's last legal residence, unless the in-custody credits equal the total sentence, including both confinement time and the period of parole."

5. On May 30th, 2007, Petitioner wrote a letter to the Board of Parole Hearings requesting to be discharged from parole. (See Copy of Letter to Board of Parole Hearings Attached As Exhibit C)

2

6. On June 12th, 2007, Linn Austen, Staff Service Manager 1, Lifer Appeals Unit for the Board of Parole Hearings responded to Petitioner's letter denying Mr. Thomas's request to be discharged from parole. In her letter Ms. Austen mistakenly stated that Petitioner was requesting to be discharged from a seven year parole period when in actuality Petitioner's parole period is fixed by statute at five years. (See Copy of Letter From the Board of Parole Hearings Denying Petitioner's Request For Discharge Attached As Exhibit D)

7. Petitioner now asserts that his parole term should be ended because the length of his time in prison and the time that he has spent on parole exceeds the amount of time he was required to be in actual custody behind prison walls and/or in the constructive custody that parole constitutes (Pen. Code § 3056; People v. Nicholson (2004) 123 Cal.App.4th 823, 830).

8. On September 10, 2007, Petitioner filed a verified petition for writ of habeas corpus in the California Superior Court, County of Alameda. On September 14, 2007, the Superior Court citing Penal Code Section 3000.1, denied the petition stating that "The Petition fails to state a prima facie case for relief." (See Superior Court Response To Habeas Petition Attached As Exhibit E)

9. [1]It appears that the Superior Court's decision was based on an assumption that Mr. Thomas was sentenced to "life parole," which applies to defendants who committed their crime on or after January 1, 1982. Petitioner committed his crime October 6, 1979, and as previously set forth in this petition his parole period is fixed by statute as five years. (See California Code of Regs. Tit. 15, div. 2, ch.5, art.1, §2515 (d).)

10. On September 24, 2007 Petitioner filed a verified petition for habeas corpus in the California Court of Appeal. On September 27, 2007, the Court denied the petition because

3

Petitioner failed to provide documentation of the term the Board set, how long he was in physical custody, or the time credits that he earned.

11. Petitioner filed for rehearing in the Appellate Court, attaching transcripts of the decision from his January 12, 2007, parole hearing and a copy of the Federal Court Order Granting the petition for habeas corpus ordering Mr. Thomas's release from custody. (Exhibits A & B)

12. On page 56 of the decision from his January 12, 2006, parole hearing Presiding Commissioner, St. Julien, indicates that Mr. Thomas is entitled to credit from February 17, 1982, to the date of the hearing. On page 16 of the Federal Court Order granting the petition for habeas corpus that ordered Petitioner's release the, District Court Judge confirms that the Board calculated Mr. Thomas's term and assessed a total confinement of 228 months. The order further confirms that Petitioner was in custody in December of 2006.

13. On October 25, 2007 the Appellate Court issued an order directing the Attorney General to provide an informal respond to the petition; and; on November 13th, the Attorney General responded.

14. On November 21, 2007, Mr. Thomas filed an informal Traverse and on December 6, 2007, the Appellate Court summarily denied the petition without setting forth a reasoned decision or making any reference to the merits of the petition.

---

[1]Currently, Penal Code §3000.1 provides for lifetime parole for prisoners convicted of murder. This section was enacted in 1982 and is inapplicable to Petitioner. on or after January 1, 1982. Petitioner committed his crime October 6, 1979, and as previously set forth in this petition his parole period is fixed by statute at five years. (See Cal. Code of Regs., tit.15, div. 2, ch.5, art.1, §2515(d).)

4

15. [2]The petition for writ of habeas corpus filed in the Alameda Superior Court was denied on the assumption that Mr. Thomas was sentenced to life parole and the First Appellate Court in its denial of Petitioner's appeal failed to issue a reasoned decision for denying the petition. Accordingly, the petition remained denied on the Alameda Superior Court's erroneous finding that Petitioner failed to state a prima facie case because he is sentenced to life parole.

16. Finally, in the Informal Response provided to the Appellate Court by the Attorney General admits that Petitioner is sentenced to a five year parole period. (See Attorney General's Informal Response and Appellate Court Order Denying Petition For Rehearing Attached As Exhibit F & G)

17.    On July 16, 2008, the Supreme Court of California denied this petition without comment or issuing a reasoned decision, leaving in place the Alameda Superior Court's factually incorrect assumption that Mr. Thomas was sentenced to life parole. (See California Supreme Court En Banc Decision Attached As Exhibit H)

18. As demonstrated within this petition Mr. Thomas has exhausted all administrative remedies, the Alameda Superior Court has denied his original petition for writ of habeas corpus on a factually incorrect assumption that Petitioner was sentenced to life parole, and the Appellate and Supreme Court Orders denying the petition for rehearing and habeas corpus were denied without comment, leaving in place the Superior Court's decision.

19. Venue in the United States District Court, for the Northern District of California is now appropriate.

---

[2]Currently, Penal Code §3000.1 provides for lifetime parole for prisoners convicted of murder. This section was enacted in 1982 and is not applicable to Petitioner.

5

## II

## **PRAYER FOR RELIEF**

WHEREFORE, PETITIONER PRAYS THE COURT:

1. Issue an order to show cause as to why it should not order the Board of
   Parole Hearings to discharge Petitioner from parole;

2. Declare the rights of the parties;

3. Appoint counsel to represent him in this matter; and;

4. Grant any other and future relief the Court deems proper.

DATED: August 13, 2008

Respectfully Submitted,

Jerome Thomas II

## III

## VERIFICATION

I, JEROME THOMAS II, DECLARE:

I am the Petitioner in this matter and am currently on Parole (Constructive Custody) in the County of Alameda, State of California. I have read the foregoing Petition for Writ of Habeas Corpus and know the contents thereof, and that the same is true of my own knowledge, except as to matters which are therein stated upon information and belief, and as to those matters, I believe them to be true.

I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed on the 13th day of August, 2008, in Oakland, California.

Jerome Thomas II

7

## IV

## ARGUMENT

The sole question presented is whether Petitioner's parole period may be reduced by the application of credit for actual custody time served in excess of the term set by the Board.

Penal Code § 2900 provides "[e]xcept as provided in this section, all time served in an institution designated by the Director of Corrections *shall be credited* as service of the term of imprisonment." (Pen. Code § 2900, subd. (c), italics added.)  Penal Code § 2900.5, subdivision. (a) provides: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including but not limited to, any time spent in a ... prison..., *all days of custody* of the defendant... *shall be credited* upon his or her term of imprisonment...." (Pen. Code § 2900.5, subd. (a), italics added.)  Penal Code section 2900.5, subdivision (c) provides:  "For the purposes of this section, 'term of imprisonment' includes any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any sentence, and also includes any term of imprisonment, including *any period of imprisonment prior to release on parole and any period of imprisonment and parole, prior to discharge, whether established or fixed by statute, by any court, or by any duly authorized administrative agency*."  (Pen. Code § 2900.5 subd. (c), italics added.)

The Board, in setting the release date for an indeterminate sentence, performs the same function as does the trial court in ordering a determinate sentence--it fixes a term of definite duration.  (*In re Hogan* (1986) 187 Cal.App.3d 819, 824.) Penal Code §1170, subdivision (a) (3), specifies in the case of a prisoner serving a determinate term, "[t]he court shall advise the defendant that he or she shall serve a period of parole and order the defendant to report to the

8

parole office closest to the defendant's last legal residence, unless the in-custody credits equal the total sentence, including both confinement time and the period of parole."

The plain language of Penal Code §§ 2900.5 and 1170 (a) (3) supports Mr. Thomas's claim that the actual days he spent in custody in excess of the term set by the Board must be credited against his parole period. "[A]ll days of custody of the defendant... shall be credited upon his or her term of imprisonment;" "'term of imprisonment' includes... *any period of imprisonment **and parole***, prior to discharge, whether established or fixed by statute, by any court, or by any duly authorized administrative agency." (Penal Code §2900.5, subds. (a), (c), bold and italics added.) No other statue that was in effect at the time of Petitioner's 1979 offense in any way limited the application of Penal Code section 2900.5 to Thomas's parole period.

Decisional law also favors Mr. Thomas's assertion that he is entitled to parole discharge. In *In re Ballard* (1981) 115 Cal.App.3d 647, the parole board proposed "deducting from [*Ballard's*] parole term the excess of the time [he] actually spent in prison beyond the time he should have spent had all credits... been timely applied." (*Id*. at p.649) The parole board in *Ballard* made this suggestion after acknowledging that "the amount of time petitioner spent incarcerated, in excess of the period he would have spent had all custody... credits ... to which he was entitled been applied, should be deducted from his parole term." (*Id*. at pp. 648-649.) The *Ballard* court agreed. (See also *In re Randolph* (1989) 215 Cal.App.3d 790, 795; *In re Reina* (1985) 171 Cal.App.3d 638, 642; *In re Anderson* (1982) 136 Cal.App.3d 472, 476 *(per curiam)*.)

Although it could be argued that Penal Code §2900.5 was intended to apply only to presentence custody time, the statue's broad language has been interpreted to apply to all actual custody credits. "[S]ection 2900.5 treats all credits uniformly, wherever accrued and wherever applied." (*People v. Burks* (1988) 66 Cal.App4th 232, 237.) Furthermore, Penal Code §2900.5

9

expressly encompasses custody time in "prison." Nothing in Penal Code §2900.5 suggests that the Legislature intended to mandate credit against a parole period for *presentence* custody time spent in prison but to prohibit credit against a parole period for *postconviction* custody time spent in prison.

Application of Penal Code §2900.5 to Petitioner's actual custody time results in a conclusion that he is entitled to be discharged from parole. When Mr. Thomas was released on parole in December of 2006, he had spent more than 299 months in custody. His "period of imprisonment" was established by the Board, a duly authorized administrative agency, when it found him suitable for parole and fixed his term at 228 months. Petitioner's period of parole was fixed by statute at five years. Penal Code §2900.5 mandated that his actual "days of custody... shall be credited upon" "any period of imprisonment and parole." When Petitioner's 299 months of custody time are applied to his 228-month term and his five-year parole period, the result is Mr. Thomas should have been discharged from his sentence upon release.

## CONCLUSION

Mr. Thomas is entitled to be discharged from parole in accordance with California Penal Code §2900.5. Petitioner moves the Court to direct the Board of Parole to discharge him from parole.

Dated: August 13, 2008

Respectfully submitted,

Jerome Thomas II

10

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  In re Jerome Thomas II On Habeas Corpus

    Case No:

I, Jerome Thomas II, declare:

I am 18 years of age and older and the petitioner in this matter.

On  August 13, 2008, I served the attached:

### PETITION FOR WRIT OF HABEAS CORPUS

in said cause, placing or causing to be placed, a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Postal mail collection system at San Francisco, California, 94117, addressed as follows:

> Office of the Attorney General
> 455 Golden Gate Ave.
> San Francisco, CA 94102

I declare under penalty of perjury under the laws of the state of California the foregoing is true and correct; and that this declaration was executed on August 13, 2008, in Alameda County, California.

Jerome Thomas II_____
Declarant

    Signature

EXHIBIT A

51

1        CALIFORNIA BOARD OF PAROLE HEARINGS

2               D E C I S I O N

3        PRESIDING COMMISSIONER ST. JULIEN:  Okay.

4    All parties have returned to the room in the

5    matter of Jerome Thomas.  And before we start, I

6    failed to mention that response to 3042 Notices,

7    the District Attorney's Office of Alameda County

8    had sent in a letter in opposition to a finding

9    of parole suitability.  Okay.  But, Mr. Thomas,

10   we have considered that letter along with the

11   prior records and we find that we do find you

12   suitable.  We are going to grant you parole.

13   The Panel has reviewed all the information

14   received from the public and relied on the

15   following circumstances in concluding that the

16   inmate is suitable for parole and would not pose

17   an unreasonable risk or danger to society or a

18   threat to public safety if released from prison.

19   The inmate has no juvenile record of assaulting

20   others.  He has a stable history as exhibited by

21   stable relationships with others, as evidenced

22   by his probably 40 or 50 letters that were read

23   into the record from family members and

24   community leaders. , While in prison the inmate

25   has enhanced his ability to function with the

26   law upon release through participation in

27   **JEROME THOMAS    C-42636    DEC PAGE 1    1/12/06**

1    educational programs, self-help and therapy
2    programs, vocational programs, and as a -- he is
3    a furniture finisher and has over 20 years in
4    PIA, and institutional job assignments. And to
5    name a few of these, Mr. Thomas has received
6    numerous laudatory chronos in bookbindery, from
7    the finishing department, and also in PIA as
8    previously mentioned. In terms of self-help and
9    therapy, the inmate has taken the Cat T program,
10   been in the veteran's group, the Squires group,
11   and as the San Quentin Utilization of Inmate
12   Resource Studies, also the San Quentin Speak
13   Easy Gavel Club, also Toastmasters. These are
14   initials, Vietnam Veterans Group of San Quentin,
15   and that's VVGSQ, and also the Kairos Program,
16   Project Impact and active in -- Mr. Thomas has
17   been active in Muslim services. And he has also
18   received the Emergency Management Institute
19   certificates, and there are several of those.
20   And the inmate lacks a significant history of
21   violent crime, and in fact there is only one
22   adult conviction or arrest, and that was in 1975
23   where Mr. Thomas pled guilty to a charge of
24   carrying a loaded firearm and received one-year
25   of court probation. And because of maturation,
26   growth, greater understanding, and advanced age
27   **JEROME THOMAS    C-42636    DEC PAGE 2    1/12/06**

53

1    he has a reduced probability of recidivism.

2    Mr. Thomas also has realistic parole plans,

3    which include a job offer and family support.

4    In fact, Mr. Thomas has approximately I'd say

5    six or seven job offers from a variety of

6    individuals and organizations.  And he also has

7    numerous offers of residence.  And he has

8    maintained close family ties while in prison by

9    letters and visits.  And he has also maintained

10   positive institutional behavior, which indicates

11   significant improvement in self-control.  And we

12   will note that Mr. Thomas has received no

13   disciplinaries, no 115s, no 128s.  And I can't

14   think of the adjective that is appropriate in

15   that instance, but it is exemplary, and it is

16   remarkable, and you indeed, sir, are a one of a

17   kind.  And that is in a positive way.  And the

18   inmate also shows signs of remorse.  He has

19   indicated that he understands the nature and

20   magnitude of the offense and accepts full

21   responsibility for the criminal behavior, and

22   has a desire to change towards good citizenship.

23   And also, there's a space here for me to read

24   about any other reason bearing upon suitability,

25   and I would, again, say that the outstanding

26   institutional behavior is indeed remarkable.

27   **JEROME THOMAS   C-42636   DEC PAGE 3   1/12/06**

1   And I will also note at this time that the Board

2   -- the Panel did definitely take into

3   consideration the victim in this case, and the

4   crime.  We have absolutely no disregard for the

5   crime.  And this was the murder of the Victim

6   Jessie Ross, R-O-S-S.  And this was at a

7   gathering at Mr. Thomas' grandfather's home in

8   1979.  And Mr. Ross was shot by the victim

9   (sic), and this indeed was a cruel act.

10   However, the only act of violence in Mr. Thomas'

11   life while -- as distressing and awful as that

12   was, Mr. Thomas has, in our opinion, fully

13   regained himself from that act.  And the

14   psychological report dated January 4, 2006

15   authored by Dr. Enaba is favorable.  And also

16   the psychological report dated October 8, 2004

17   by Dr. Kornberg is favorable in terms of

18   Mr. Thomas being released.  And the base life

19   offense in which the inmate has been convicted

20   is murder second, Penal Code Section violated

21   187.  And there's also use of a gun, 12022.5.

22   And this offense occurred on October 6th, 1979,

23   and we used the matrix in the CCR Title XV at

24   Section 2403C for second-degree murder committed

25   on or after November 8, 1978.  And the Panel

26   finds that Category B as in boy two is

27   **JEROME THOMAS   C-42636   DEC PAGE 4   1/12/06**

```
1    appropriate in that there was a prior
2    relationship between the inmate and the victim,
3    and the death of the victim was almost
4    immediate. And we assess 228 months for the
5    base life offense, and notes that this is the
6    aggravated offense. And we are aggravating this
7    crime because the victim was particularly
8    vulnerable due to age, and as well as being
9    highly intoxicated. And also during the
10   commission of the crime the inmate had a clear
11   opportunity to cease, but instead continued.
12   And the manner in which the crime was committed
13   created a potential for serious injury to
14   persons other than the victim of the crime.
15   Okay.
16       DEPUTY COMMISSIONER ARMENTA: Did you give
17   him six more months --
18       PRESIDING COMMISSIONER ST. JULIEN: Yeah.
19       DEPUTY COMMISSIONER ARMENTA: -- for the use
20   of a weapon?
21       PRESIDING COMMISSIONER ST. JULIEN: Yeah.
22       DEPUTY COMMISSIONER ARMENTA: Okay.
23       PRESIDING COMMISSIONER ST. JULIEN: And we
24   find that the base term is 228 months, and that
25   is case number ALA69783, count one, murder
26   second, and time for using the weapon you add
27   JEROME THOMAS   C-42636   DEC PAGE 5   1/12/06
```

56

1    six months for a total of 234 months.  And then

2    we give you a credit.  You get your full credit

3    because, as we say, you don't have any

4    violations.  So you get time credit from the

5    start of your life term, February 17, 1982 to

6    today, January 12, 2006, which is 96 months.  So

7    we minus 234 from 96 and that leaves 138 months.

8    So I think, sir, you have done your time.  Okay.

9    And we impose the special conditions of parole,

10   and do not use alcoholic beverages, attend

11   parole outpatient clinic, and do not associate

12   with known gang members.  And we -- And do you

13   have -- You have plans now in Alameda County?

14        **INMATE THOMAS:**  Yes, Ma'am, I do.

15        **PRESIDING COMMISSIONER ST. JULIEN:**  Okay.

16   So you need to go outside of your -- Okay.  I

17   just wanted to make sure.  Okay.  And, sir, we

18   are very happy and pleased to have been able to

19   make this decision today.  Commissioner?

20        **DEPUTY COMMISSIONER ARMENTA:**  Good luck to

21   you.  I think -- I believe you are a very good

22   man.  And if everything goes forward and you go

23   out, I'm certain that you're not going to be

24   back here ever again.        ,

25        **INMATE THOMAS:**  No, Sir.

26        **PRESIDING COMMISSIONER ST. JULIEN:**  We want

27   **JEROME THOMAS   C-42636   DEC PAGE 6   1/12/06**

57

1    to read about you.

2          INMATE THOMAS:  You will.

3          PRESIDING COMMISSIONER ST. JULIEN:  Your

4    positive work in the community.

5          INMATE THOMAS:  (Indiscernible) I will.  I

6    will be personally accountable to the both of

7    you.

8          PRESIDING COMMISSIONER ST. JULIEN:  Okay.

9                      --o0o--

10

11

12

13

14

15

16

17

18

19                      .

20

21

22

23   PAROLE GRANTED                    MAY 1 1 2006

24   THIS DECISION WILL BE FINAL ON:_____

25   YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

26   DATE, THE DECISION IS MODIFIED.

27   JEROME THOMAS   C-42636   DEC PAGE 7   1/12/06

58

# CERTIFICATE AND

# DECLARATION OF TRANSCRIBER

I, CONNIE MASTIN, a duly designated transcriber, PETERS SHORTHAND REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 57, and which recording was duly recorded at CALIFORNIA STATE PRISON, SAN QUENTIN, at SAN QUENTIN, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of JEROME THOMAS, CDC No. C-42636, on JANUARY 12, 2006, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated FEBRUARY 7, 2006, at Sacramento County, California.

Connie Mastin
Connie Mastin
Transcriber
**PETERS SHORTHAND REPORTING**

# EXHIBIT B

1

2

3

4

FILED

2008 DEC 21 P 3: 07

[illegible stamp]

5

6

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

12

13

JEROME THOMAS, II,

           Petitioner,

    v.

JILL BROWN, warden,

           Respondent.

_____/

No. C 05-1332 MHP (pr)

**ORDER GRANTING HABEAS PETITION**



14

15

16

17

18

19

20

21

**INTRODUCTION**

     Jerome Thomas, a prisoner at San Quentin State Prison, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. After 20 years of incarceration on his 17-to-life sentence during which he has exhibited exemplary behavior, Thomas' crime does not provide some evidence to support the Governor's decision that he is currently unsuitable for parole. The petition will be granted.

22

**BACKGROUND**

23

24

25

26

27

28

     Jerome Thomas was convicted in 1982 in Alameda County Superior Court of second degree murder with use of a firearm. He was sentenced to a prison term of seventeen years to life, including a two-year enhancement for use of a firearm. His habeas petition does not concern that conviction directly, but instead focuses on a March 2003 decision by former Governor Gray Davis to reverse a February 21, 2003 decision by the Board of Prison Terms ("BPT") finding him suitable for parole.

**United States District Court**

For the Northern District of California

1    The specifics regarding the crime and the circumstances regarding parole suitability
2 are described in the Discussion section later in this order and are only mentioned here in
3 brief. Thomas shot and killed 53-year old Jessie Ross on October 6, 1979 after Ross made a
4 pass at Thomas' girlfriend. They were at a party when Thomas learned that Ross had made
5 the pass; Thomas and Ross argued about it. Thomas left the party with his girlfriend, but
6 returned to the party about 15 minutes later and shot Ross six times at close range. He turned
7 himself in two days later. He was convicted of second degree murder with use of a firearm
8 in 1982. Other than the murder, his criminal history consists of a single misdemeanor
9 conviction four years before the murder. Thomas has exhibited exemplary behavior during
10 his 20 years in state prison since the conviction and has good parole plans. The BPT decided
11 Thomas was parole-suitable, but the BPT's decision was subject to review by the Governor.

12    Governor Davis identified several factors in support of his decision to reverse the BPT
13 panel's decision. He determined that Thomas was not suitable for parole and would pose an
14 unreasonable risk of danger to society or a threat to public safety if he was released based on
15 the circumstances of the offense, Thomas' failure to accept responsibility for the crime, his
16 need for further programming for anger management and his pre-offense history.

17    Thomas sought relief in the California courts. The Marin County Superior Court
18 denied his petition for writ of habeas corpus in 2003. See Exh. AA to Resp. Exh. 8. The
19 California Court of Appeal summarily denied his petition for writ of habeas corpus and the
20 California Supreme Court summarily denied his petition for review.

21    Thomas then filed his federal petition for writ of habeas corpus. After an
22 unsuccessful motion to dismiss, respondent filed an answer. Thomas filed a traverse. The
23 matter is now ready for a decision on the merits.

24                            **JURISDICTION AND VENUE**

25    This court has subject matter jurisdiction over this habeas action for relief under 28
26 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged
27 action occurred at San Quentin State Prison in Marin County, California, within this judicial
28 district. 28 U.S.C. §§ 84, 2241(d).

1

**EXHAUSTION**

2          Prisoners in state custody who wish to challenge collaterally in federal habeas

3    proceedings either the fact or length of their confinement are required first to exhaust state

4    judicial remedies, either on direct appeal or through collateral proceedings, by presenting the

5    highest state court available with a fair opportunity to rule on the merits of each and every

6    claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not

7    dispute that state court remedies were exhausted for the claim asserted in the petition.

8

**STANDARD OF REVIEW**

9          This court may entertain a petition for writ of habeas corpus "in behalf of a person in

10   custody pursuant to the judgment of a State court only on the ground that he is in custody in

11   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

12   The petition may not be granted with respect to any claim that was adjudicated on the merits

13   in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that

14   was contrary to, or involved an unreasonable application of, clearly established Federal law,

15   as determined by the Supreme Court of the United States; or (2) resulted in a decision that

16   was based on an unreasonable determination of the facts in light of the evidence presented in

17   the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S.

18   362, 409-13 (2000).   Section 2254(d) applies to a habeas petition from a state prisoner

19   challenging the denial of parole. See Sass v. California Board of Prison Terms, 461 F.3d

20   1123, 1126-27 (9th Cir. 2006).

21

**DISCUSSION**

22   A.    Due Process Requires That Some Evidence Support A Parole Denial

23          A California prisoner with a sentence of a term of years to life with the possibility of

24   parole has a protected liberty interest in release on parole and therefore a right to due process

25   in the parole suitability proceedings. See Sass, 461 F.3d at 1127-28; Board of Pardons v.

26   Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442

27   U.S. 1 (1979); Cal. Penal Code § 3041(b).

28

1    A parole board's decision satisfies the requirements of due process if "some evidence"
2  supports the decision. Sass, 461 F.3d at 1128-29 (adopting some evidence standard for
3  disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)).
4  California law adds a layer of review by giving the governor the power to review the parole
5  board's decision and to affirm, modify or reverse the decision but only on the basis of the
6  same factors the parole authority is required to consider. See Cal. Penal Code § 3041.2; Cal.
7  Const. art. V, § 8(b). The California Supreme Court has determined, as a matter of state law,
8  that the governor's decision must also satisfy the "some evidence" standard. See In re
9  Rosenkrantz, 29 Cal. 4th 616, 676-77 (Cal. 2002), cert. denied, 538 U.S. 980 (2003).
10  Because the governor's review is an extension of the parole consideration process and the
11  parole decision does not become final until such review has occurred (or the time for it has
12  passed), the governor's decision must be supported by some evidence.

13    "To determine whether the some evidence standard is met 'does not require
14  examination of the entire record, independent assessment of the credibility of witnesses, or
15  weighing of the evidence. Instead, the relevant question is whether there is any evidence in
16  the record that could support the conclusion reached'" by the parole board or the governor.
17  Id. at 1128 (quoting Superintendent v. Hill, 472 U.S. at 455-56). The "some evidence
18  standard is minimal, and assures that 'the record is not so devoid of evidence that the findings
19  of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting
20  Superintendent v. Hill, 472 U.S. at 457). The some evidence standard of Superintendent v.
21  Hill is clearly established law in the parole context for purposes of § 2254(d). Sass, 461 F.3d
22  at 1129.

23    A critical issue in parole denial cases concerns the BPT's and governor's use of
24  evidence about the murder that led to the conviction. Two cases provide the guideposts for
25  applying the Superintendent v. Hill some evidence standard on this point.  In Biggs v.
26  Terhune, 334 F.3d 910 (9th Cir. 2003), the court explained that the value of the criminal
27  offense fades over time as a predictor of parole suitability: "The Parole Board's decision is
28  one of 'equity' and requires a careful balancing and assessment of the factors considered. . . .

4

1  A continued reliance in the future on an unchanging factor, the circumstance of the offense
2  and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the
3  prison system and could result in a due process violation." Biggs, 334 F.3d at 916-17. Biggs
4  upheld the initial denial of a parole release date based solely on the nature of the crime and
5  the prisoner's conduct before incarceration, but cautioned that "[o]ver time . . . , should
6  Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying
7  him a parole date simply because of the nature of Biggs' offense and prior conduct would
8  raise serious questions involving his liberty interest in parole." Id. at 916. The recent
9  decision of Sass criticized the Biggs statements as improper and beyond the scope of the
10 dispute before the court: "Under AEDPA it is not our function to speculate about how future
11 parole hearings could proceed." Sass, 461 F.3d at 1129. Sass determined that the parole
12 board is not precluded from relying on unchanging factors such as the circumstances of the
13 commitment offense or the parole applicant's pre-offense behavior in determining parole
14 suitability. See id. at 1129 (commitment offenses in combination with prior offenses
15 provided some evidence to support denial of parole at subsequent parole consideration
16 hearing). The Sass and Biggs decisions are not polar opposites and can be harmonized: the
17 BPT can look at immutable events, such as the nature of the conviction offense and pre-
18 conviction criminality, to predict that the prisoner is not currently suitable for parole (Sass),
19 but the weight to be attributed to those immutable events decreases over time as a predictor
20 of future dangerousness as the years pass and the prisoner demonstrates favorable behavior
21 (Biggs). The one way in which Sass limits Biggs is to put to rest any idea that the
22 commitment offense and pre-offense behavior only support the initial denial of parole. The
23 immutable events may support the decision to deny parole not just at the first parole
24 consideration hearing but also at subsequent hearings. However, Sass did not dispute the
25 principle that, other things being equal, a murder committed 50 years ago is less probative of
26 a prisoner's current dangerousness than one committed 10 years ago. Not only does the
27 passage of time in prison count for something, exemplary behavior and rehabilitation in
28 prison counts for something according to Biggs. Superintendent v. Hill's standard might be

5

1  quite low, but it does require that the decision <u>not</u> be arbitrary, and reliance on only the facts

2  of the crime might eventually make for an arbitrary decision.

3      Having determined that there is a due process right, and that some evidence is the

4  evidentiary standard for judicial review, the next step is to look to state law because that sets

5  the criteria to which the some evidence standard applies. One must look to state law to

6  answer the question, "'some evidence' of what?"

7  B.    State Law Standards For Parole For Murderers In California

8      California uses indeterminate sentences for most non-capital murderers, with the term

9  being life imprisonment and parole eligibility after a certain minimum number of years. A

10  first degree murder conviction yields a base term of 25 years to life and a second degree

11  murder conviction yields a base term of 15 years to life imprisonment. <u>See</u> <u>In re</u>

12  <u>Dannenberg</u>, 34 Cal. 4th 1061, 1078 (Cal.), <u>cert. denied</u>, 126 S. Ct. 92 (2005); Cal. Penal

13  Code § 190. The upshot of California's parole scheme described below is that a release date

14  normally must be set unless various factors exist, but the "unless" qualifier is substantial.

15      A BPT panel meets with an inmate one year before the prisoner's minimum eligible

16  release date "and shall normally set a parole release date. . . . The release date shall be set in a

17  manner that will provide uniform terms for offenses of similar gravity and magnitude in

18  respect to their threat to the public, and that will comply with the sentencing rules that the

19  Judicial Council may issue and any sentencing information relevant to the setting of parole

20  release dates." Cal. Penal Code § 3041(a). Significantly, that statute also provides that the

21  panel "shall set a release date unless it determines that the gravity of the current convicted

22  offense or offenses, or the timing and gravity of current or past convicted offense or offenses,

23  is such that consideration of the public safety requires a more lengthy period of incarceration

24  for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal.

25  Penal Code § 3041(b).

26      One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides: "A parole

27  date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A

28  parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A

1  parole date set under this article shall be set in a manner that provides uniform terms for
2  offenses of similar gravity and magnitude with respect to the threat to the public."[1]  The
3  regulation also provides that "[t]he panel shall first determine whether the life prisoner is
4  suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be
5  found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose
6  an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. §
7  2402(a).  The panel may consider all relevant and reliable information available to it.  15 Cal.
8  Code Regs. § 2402(b).  As noted earlier, the governor's review must be done on the basis of
9  the same factors the parole authority is required to consider.  See Cal. Penal Code § 3041.2;
10  Cal. Const. art. V, § 8(b).

11      The regulations contain a matrix of suggested base terms for several categories of
12  crimes.  See 15 Cal. Code Regs. § 2403.  For example, for second degree murders, the matrix
13  of base terms ranges from the low of 15, 16, or 17 years to a high of 19, 20, or 21 years,
14  depending on some of the facts of the crime.  Some prisoners estimate their time to serve
15  based only on the matrix.  However, going straight to the matrix to calculate the sentence
16  puts the cart before the horse because it ignores critical language in the relevant statute and
17  regulations that requires the prisoner first to be found suitable for parole.

18      The statutory scheme places individual suitability for parole above a prisoner's
19  expectancy in early setting of a fixed date designed to ensure term uniformity.  Dannenberg,
20  34 Cal. 4th at 1070-71.  Under state law, the matrix is not reached unless and until the
21  prisoner is found suitable for parole.  Id. at 1070-71; 15 Cal. Code Regs. § 2403(a) ("[t]he
22  panel shall set a base term for each life prisoner who is found suitable for parole").  The
23  California Supreme Court's determination of state law in Dannenberg is binding in this
24  federal habeas action.  See Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

25      The California Supreme Court also has determined that the facts of the crime can
26  alone support a sentence longer than the statutory minimum even if everything else about the
27  prisoner is laudable.  "While the Board must point to factors beyond the minimum elements
28  of the crime for which the inmate was committed, it need engage in no further comparative

7

1  analysis before concluding that the particular facts of the offense make it unsafe, at that time,

2  to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re

3  Rosenkrantz, 29 Cal. 4th 616, 682-83 (Cal. 2002), cert. denied, 538 U.S. 980 (2003) ("[t]he

4  nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole"

5  but might violate due process "where no circumstances of the offense reasonably could be

6  considered more aggravated or violent than the minimum necessary to sustain a conviction

7  for that offense").

8  C.      The Governor's Decision Was Not Supported By Some Evidence

9       The Governor identified several factors supporting his decision to reverse the BPT

10  decision and find Thomas unsuitable for parole, i.e., the circumstances of the offense,

11  Thomas' failure to accept responsibility, his need for further programming and his pre-

12  offense history.

13      The Marin County Superior Court upheld the decision. See Exh. AA to Resp. Exh. 8.

14  That court determined that some evidence did support the decision, although that court had

15  reservations about it. See id. at 2-4. The Marin court identified the some evidence standard

16  as the proper standard for judicial review of evidentiary sufficiency for parole denial cases.

17  Although that court discussed the law, it did not mention the evidence it relied upon in

18  reaching its conclusion that there was some evidence to support the Governor's decision. The

19  California Court of Appeal and California Supreme Court denied the petitions without

20  comment. This court therefore independently will review the record in order to determine

21  whether the Marin County Superior Court's findings were objectively unreasonable under 28

22  U.S.C. § 2254(d). See Greene v. Lambert, 288 F.3d 1081, 1088-89 (9th Cir. 2002).

23      1.      Commitment Offense

24      The Governor's decision described the facts of the crime, as taken from the probation

25  officer's report:

26      According to the probation officer's report, at approximately 7:30 p.m. on October 6,
1979, Jerome Thomas's grandfather hosted a party for some friends. Jessie Ross, 63
27      years old, was a family friend and guest at the party. Mr. Thomas, age 26, accused
Mr. Ross of making advances towards Mr. Thomas's girlfriend, Chanelle Pierce. Both
28      men had been drinking, and a loud argument ensued. Mr. Thomas and Ms. Pierce left

8

1        the party.

2        Mr. Ross stayed and began to play dice with Mr. Thomas's grandfather.
         Approximately 15 minutes later Mr. Thomas returned armed with a gun.  Without
3        speaking, Mr. Thomas fired six bullets into Mr. Ross from approximately three feet
         away, and then left.  Mr. Ross was pronounced dead at the scene.  [¶]  Mr. Thomas
4        surrendered to police two days later.

5    Resp. Exh. 5 at 1.  This recitation of the facts is an incorrect summation of the probation

6    officer's report in two minor ways:  (1) the probation officer's report stated that Jerome

7    Thomas' grandfather and the victim were drinking, but did not state that Jerome Thomas was

8    drinking and (2) the probation officer's report stated that the victim was 53, not 63, years old.

9    See Resp. Exh. 6, p. 5.  These discrepancies are not identified just to nit-pick:  an alcohol-

10   induced shooting would suggest a possibility of a substance abuse problem and adding ten

11   years to the victim's age would suggest a more vulnerable victim.

12       A circumstance tending to indicate unsuitability for parole is that "the prisoner

13   committed the offense in an especially heinous, atrocious or cruel manner."  15 Cal. Code

14   Regs. § 2402(c)(1).  The factors to be considered in determining whether that circumstance

15   exists are that there were multiple victims, "[t]he offense was carried out in a dispassionate

16   and calculated manner, such as an execution-style murder," "[t]he victim was abused, defiled

17   or mutilated during or after the offense," "[t]he offense was carried out in a manner which

18   demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for

19   the crime is inexplicable or very trivial in relation to the offense."  15 Cal. Code Regs. §

20   2402(c)(1).

21       The Governor's consideration of the commitment offense was certainly permissible,

22   but his decision is worded in such a way that one cannot determine that he actually adhered

23   to the regulation.  Specifically, he did not articulate the standard and did not articulate that

24   Thomas committed the offense "in an especially heinous, atrocious or cruel manner."  The

25   Governor did mention that Thomas' "motive was extremely trivial" in relation to the act of

26   killing in that Thomas killed the victim after the victim had made a pass at his girlfriend.

27   That factor was well-supported by the record.  The triviality of the motive is a factor tending

28   to support a determination that the offense was committed in an especially heinous, atrocious

9

1    or cruel manner but is not synonymous with it.  See 15 Cal. Code Regs. § 2402(C)(1)(E).

2         The Governor also found Thomas' "disregard for the life and suffering of others

3    particularly callous;" that "[t]here was great potential for serious injury to others, as there

4    were approximately five to seven people in the house at the time of the shooting.  In fact, Mr.

5    Thomas's grandfather was just a few feet from Mr. Ross."  Resp. Exh. 5, p. 2.  The problem

6    with this is that the Governor appeared to substitute potential for actual disregard for life and

7    suffering of others, and that was not one of the listed factors tending to show the offense was

8    committed in an especially heinous, atrocious or cruel manner.  See 15 Cal. Code Regs. §

9    2402(C)(1)(D).  The regulation guides the Governor's review of the case, and the Governor's

10   decision did not adhere to the regulation.  There was not some evidence to show that the

11   murder was committed in an especially heinous, atrocious or cruel manner such as to show

12   present unsuitability for parole.

13        The Governor's determination that the manner of the killing demonstrated "an extreme

14   level of anger and lack of control, and a degree of premeditation" was well-supported by the

15   record.  Resp. Exh. 5.  Thomas had a cooling down period between any provocation and the

16   killing:  he left the party after the initial argument and returned fifteen minutes later to kill

17   the victim.  As discussed below, the anger and lack of control problems have been addressed

18   by Thomas in prison.  Although there was evidence of premeditation as the Governor

19   mentioned, the jury had convicted Thomas of second degree murder and not first degree

20   murder.  Additionally, Thomas' actions in returning to kill the victim after the initial

21   argument ended is the kind of immutable event that Biggs cautioned against relying on in

22   perpetuity to deny parole for present dangerousness.  Thomas' exemplary behavior in prison

23   plus his efforts to work on anger management plus his favorable current psychological

24   reports reduce the predictive value of this fact 20 years after the killing.

25        2.    Need To Take Responsibility For The Crime

26        The Governor also determined that Thomas had failed to accept responsibility for the

27   crime.  The Governor wrote: "Since the time of his arrest, Mr. Thomas has asserted that Mr.

28   Ross threatened him with a gun during their initial confrontation.  However the police

10

1  investigation confirmed that Mr. Ross was not armed and was defenseless when gunned
2  down.  The fact that Mr. Thomas continues this assertion demonstrates that he has failed to
3  fully accept responsibility for his actions."  Resp. Exh. 5, p. 2.

4      The Governor's reliance on this circumstance is not supported by some evidence.  The
5  two scenarios are not necessarily inconsistent:  the victim may have had a gun when he and
6  Thomas first argued and not have had that gun when he was killed fifteen minutes later when
7  Thomas returned to the party and shot him in a different room.  Thomas did not claim that the
8  victim was armed when he killed him; the police confirmed that fact, i.e., the victim was
9  unarmed when killed.  Thus, Thomas' statement that the victim was armed earlier does not
10  support a finding of a failure to accept responsibility for his actions, absent evidence in the
11  record that the victim was not armed at either time.  The record does not indicate that
12  Thomas was attempting to blame the victim for the shooting itself:  Thomas acknowledged
13  that the had left the party with his girlfriend and drove back 15 minutes later to confront the
14  victim.  The BPT panel and the psychologist who evaluated Thomas concluded that he had
15  accepted responsibility and was very remorseful.  See Exh. F to Resp. Exh. 8 (BPT 10/18/02
16  reporter's transcript) (hereinafter "RT") at 7-8; 39; Exh. H to Resp. Exh. 8.  The transcript of
17  the parole hearing reflects an acceptance of responsibility and an understanding of the impact
18  that the killing had on the victim's family as well as on Thomas' own family.  There was not
19  some evidence to support the Governor's determination that Thomas had failed to fully
20  accept responsibility for killing Ross.

21      3.  Need For More Programming To Address The Cause Of The Murder

22      The Governor determined that Thomas needed more time to work on anger
23  management and to "more fully address the causative factors of his crime."  Resp. Exh. 5 at
24  2.  The Governor wrote:

25  Although Mr. Thomas's recent evaluations have been positive, his initial evaluation
   found that he responds to situations with exaggerated anger and becomes vindictive
26  and revengeful.  His 1991 evaluation found his prospects for successful parole were
   "guarded."  Despite these assessments, Mr. Thomas's participation in anger
27  management programs has been limited.  I believe he requires further incarceration in
   order to more fully address the causative factors of his crime.
28

11

1 | <u>Id.</u>

2 The Governor's finding on this point was contrary to the evidence in the record and

3 arbitrary. First, the record does not indicate multiple episodes of exaggerated anger, contrary

4 to the Governor's intimation that over-reacting was a repeated behavior. Second, the

5 Governor overlooked the evidence that Thomas had participated in a 10-week anger

6 management course. <u>See</u> RT 19.[2] Third, the Governor's reliance on a 1991 evaluation was

7 irrational because he inexplicably ignored a much more current psychological evaluation in

8 the record. The Governor did not indicate that he considered the 2002 evaluation, that he

9 found any problems in it or that he rejected it; instead, he simply ignored it. When deciding

10 whether an inmate poses a danger if paroled in 2002, reliance on a 1991 psychological

11 evaluation when a 2002 psychological evaluation is available and not flawed in any

12 identified way supports an inference that the decision was arbitrary and the outcome pre-

13 determined.

14 The 2002 psychological evaluation was very favorable, as the BPT panel noted in

15 finding Thomas suitable for parole. <u>See</u> RT 39-43; Exh. H to Resp. Exh. 8. The 2002

16 psychological report indicated that Thomas' understanding of his behavior had evolved and

17 improved over the years in custody. <u>See</u> Exh. H to Resp. Exh. 8. While a psychologist had

18 determined that Thomas' risk for violence in the community was "unpredictable" in 1991, he

19 was considered a low risk for violence by 2002. The psychologist concluded in 2002:

20 Overall, Mr. Thomas appears to have a low risk for violence in the community. He is
not criminally oriented and he is not normally prone to violence. The index offense

21 appears to have been an isolated incident of affective violence, with Mr. Thomas
exhibiting impulsive rage and poor judgment in response to a stressful interpersonal

22 encounter. Through his participation in self-help groups, he seems to have gained
some insight into the dynamic factors that contributed to the crime and he seems more

23 willing to explore these issues. His previous defensiveness appears to have been self-
protective, with Mr. Thomas attempting to avoid the painful recognition that despite

24 his prosocial orientation, he had killed another human being in a fit of rage. He now
seems able to control his angry impulses and to deal with them in more constructive

25 ways. This is evidenced by his remarkable ability to avoid CDC-115's during his long
incarceration in prison.

26

27 Exh. H to Resp. Exh. 8, pp. 4-5. Although there is no hard and fast rule that a decision-

28 maker must accept the most current psychological evaluation, ignoring it without explanation

1  in favor of reliance on a decade-old report smacks of arbitrariness. The Governor cannot
2  have it both ways: if he wants to say an inmate needs to work on anger management, he
3  cannot ignore it when the inmate works on anger management. There was not some evidence
4  to support the Governor's determination that Thomas needed further programming to work
5  on anger management or the causative factors for the killing.

6       4.    Prior History

7       The Governor placed only slight reliance on Thomas' prior criminality and substance
8  abuse, but even that appears to overstate the case. The Governor noted that Thomas had pled
9  guilty to carrying a concealed weapon. The Governor did not note that the charge was a
10 misdemeanor, that the conviction occurred four years before the killing, that Thomas had
11 been sentenced to one year of probation (which he successfully completed), that this one
12 conviction was Thomas' only conviction and that he had no juvenile record. The BPT had
13 described Thomas' criminal history as "very negligible," in that it consisted of no juvenile
14 record at all and a single misdemeanor conviction as an adult. RT 9; see RT 38 ("he lacks a
15 significant criminal history of violent crime"); Resp. Exh. 6, p. 5 (conviction was for a
16 misdemeanor).

17      The Governor wrote that Thomas "has also admitted using an illegal drug on a regular
18 basis during a period of his life." Resp. Exh. 5, p. 2. This deliberately vague statement
19 appears to be a reference to a psychologist's report that showed that Thomas "readily
20 admitted to occasionally smoking marijuana as a youth, and only moderately ingesting
21 alcohol, and alcohol and drugs had not been an issue at all during his entire incarceration."
22 RT 42. There was no evidence that he used marijuana as an adult before the murder (which
23 was committed when he was 26 years old) or at any time during his incarceration.

24      Although the Governor's statements are not actually incorrect, the probative value of
25 occasional use of marijuana while a minor and a single misdemeanor conviction for a non-
26 violent offense -- when viewed in the context of other extremely positive behavior -- as
27 predictors of current suitability for parole for a 49-year old are virtually nil.

28

1    D.    Thomas' Other Circumstances

2        Although the Governor thought the negative factors discussed above outweighed the

3    positive factors for Thomas, even the Governor noted that Thomas had "made commendable

4    gains during his time in prison. He has received satisfactory to exceptional performance

5    ratings in his work assignments and has received no disciplinary reports. Mr. Thomas has

6    been heavily involved in self-help programs, including various veterans' groups and the

7    SQUIRES program, which helps redirect juveniles away from crime." Resp. Exh. 5, p. 1.

8    The BPT elaborated on Thomas' in-prison behavior at the hearing. Thomas had participated

9    in the "Cat T" and "Cat X" programs; had been involved in the Veteran's Group, the

10   Veterans' Issues Group, Squires, the Speak Easy Gavel Club, Toastmasters, the Catargio

11   Group; and continued to be active in those groups. RT 38. The BPT also was very

12   impressed by the complete lack of disciplinary reports for the 17 years Thomas had been

13   incarcerated. The BPT concluded that "[w]hile imprisoned he has enhanced his ability to

14   function within the law upon release through his participation in self-help and therapy,

15   vocational programs, institutional job assignments and volunteerism." RT 37-38.

16        The BPT determined that Thomas was remorseful:

17        He shows signs of remorse. he has indicated that he understands the nature and the
          magnitude of the offense, and he accepts responsibility for the criminal behavior and
18        has a desire to change toward good citizenship. In fact, I would say that his desire to
          change towards good citizenship began when he was first incarcerated, as he has
19        never presented himself as a problem to the community within the prison setting. And
          the other – the other reasons bearing upon suitability is that the inmate has a great
20        understanding of the impact on not only the victim's family, but his own family and
          friends in committing this crime.
21
22   RT 39. The BPT noted that the psychological reports supported this view, as well as that

23   Thomas presented no need for mental health services. RT 39-40. The psychological reports

24   were favorable for release and was considered to have a low risk for violence in the

25   community. "He is not criminally oriented, and he is not normally prone to violence. The

26   index offense appears to have been an isolated incident of effective violence" and "impulsive

27   rage." RT 40, quoting 2/21/02 psychological report. The psychologist opined that Thomas

28   "now seems able to control his angry impulses and to deal with them in more constructive

14

1  ways. This is evidenced by his remarkable ability to avoid CDC 115's during his long

2  incarcerated period.'" RT 41, quoting 2/21/02 psychological report. The BPT additionally

3  noted a favorable psychological report from Dr. Jeko in July 2001 that discussed Thomas'

4  maturation in prison. RT 42-43.

5     The BPT also saw a positive future for Thomas: "Because of maturation, growth,

6  greater understanding and advanced age, he has reduced his probability of recidivism. He

7  has very realistic parole plans which include a job offer, family support and a place to live.

8  He has maintained close family ties while imprisoned via letters and visits, and he has

9  maintained positive institutional behavior, which indicates significant improvement in self-

10 control." RT 38. Thomas had letters of support that indicated he had employment

11 opportunities and housing available upon parole. RT 24-26.  Thomas also had a worsening

12 health problem in that he was losing his eyesight due to glaucoma. RT 3; Resp. Exh. 7, p. 2.

13 E.    Thomas Is Entitled To Relief

14    Thomas had first been considered for parole in 1990 and was found not suitable at the

15 ten subsequent parole consideration hearings thereafter. See RT 6, 27. He was finally found

16 suitable for parole at the October 18, 2002 BPT hearing, after he had been in custody for 20

17 years on his 17-to-life sentence. The Governor looked at the same evidence as the BPT and

18 reached the opposite conclusion.

19    This case is just the sort of case Biggs envisioned, where the commitment offense is

20 repeatedly relied on to deny parole notwithstanding the prisoner's exemplary behavior and

21 evidence of rehabilitation since the commitment offense.[3]  The murder here, while terrible,

22 was not notably worse than other second degree murders.  And the crime was aberrant

23 behavior rather than part of continuing criminality.  In light of the extensive evidence of

24 Thomas' in-prison rehabilitation and exemplary behavior, the reliance on the unchanging

25 factor of the murder to deny Thomas parole for the tenth time and 20 years into his 17-to-life

26 sentence violated his right to due process.  The some evidence standard provides more

27 protection than against fabricated charges or bureaucratic mistakes -- the some evidence

28 standard also protects against arbitrary decisions. See Superintendent v. Hill, 472 U.S. at

1   454-55, 457.  The Governor's decision was arbitrary and therefore did not comport with the

2   some evidence standard.  The state court's unexplained conclusion that there was some

3   evidence to support the Governor's decision was an unreasonable application of

4   Superintendent v. Hill.  The state court's approval without discussion of the Governor's

5   decision -- a decision that, as mentioned in this order, had several details of the crime wrong,

6   incorrectly stated that Thomas had not accepted responsibility for the crime, ignored current

7   psychological evaluations in favor of an outdated one, and overstated the extent of Thomas'

8   pre-offense misbehavior – unreasonably applied the some evidence standard.  Thomas is

9   entitled to relief under the standard of 28 U.S.C. § 2254(d).

10         Having decided that the petition should be granted, the next question concerns the

11   proper remedy.  Once the BPT determined that Thomas was suitable for parole, it calculated

12   his term and assessed a total term of confinement of 228 months, less post-conviction credits

13   of 83 months, for a total period of confinement of 12.1 years, and that Thomas was already

14   past his release date.  RT 44.  The significance of this calculation is that, because the

15   Governor's decision was not supported by some evidence, this court need not send the matter

16   back to the BPT to set a term for Thomas because the BPT has already done so.  Thomas is

17   entitled to release and he is past his release date.

18                                          **CONCLUSION**

19         For the foregoing reasons, the petition for writ of habeas corpus is granted.

20   Respondent must release Jerome Thomas from custody within **ten days** of the date of this

21   order.  Within **twenty days** of the date of this order, respondent must also file a notice with

22   the court confirming the date on which Thomas was released.

23         IT IS SO ORDERED.

24   DATED:  December 21 , 2006

25                                          _____
                                            Marilyn Hall Patel
26                                          United States District Judge

27

28

16

# NOTES

1.      The listed circumstances tending to show <u>unsuitability</u> for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior. 15 Cal. Code Regs. § 2402(c). The listed circumstances tending to show <u>suitability</u> for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior. 15 Cal. Code Regs. § 2402(d).

2.      A prison readjustment counseling therapist wrote on February 14, 2001 that Thomas "completed a 10 week course dealing with Anger Management presented by the United States Department of Veteran's Affairs, North B Veteran's Center. The session delved into all aspects of anger resulting in frank discussions, thought, which veteran Thomas participated in fully. His enthusiastic input enhanced the session as well as stimulated participation by others. . . . Veteran Thomas should be commended for his personal commitment to the success of this program." RT 19-20.

3.      Respondent's suggestion that there was not repeated reliance on the same facts because this was the first time the Governor (rather than the BPT) relied on it to deny parole is unpersuasive, as it would allow the various parole authorities to take turns relying on the same evidence with none being said to have relied on it repeatedly. Regardless of who makes the decision, the result is the same for the prisoner in that parole is denied repeatedly.

17

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

THOMAS,

         Plaintiff,

v.

BROWN et al,

         Defendant.

_____/

Case Number: CV05-01332 MHP

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 21, 2006, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jerome Thomas C-42636
San Quentin State Prison
San Quentin, CA 94974

Scott Colin Mather
CA State Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

Dated: December 21, 2006

                     Richard W. Wieking, Clerk
                     By: R.B. Espinosa, Deputy Clerk

FILED

2006 DEC 21  PM 3: 07

RICHARD W.
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEROME THOMAS, II,

    Petitioner,

        v.

JILL BROWN, warden,

    Respondent.

_____/

No. C 05-1332 MHP (pr)

**JUDGMENT**

The petition for writ of habeas corpus is granted.

IT IS SO ORDERED AND ADJUDGED.

DATED:  December 21, 2006

                    Marilyn Hall Patel
                    United States District Judge

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

THOMAS,

        Plaintiff,

   v.

BROWN et al,

        Defendant.

_____ /

Case Number: CV05-01332 MHP

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 21, 2006, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jerome Thomas C-42636
San Quentin State Prison
San Quentin, CA 94974

Scott Colin Mather
CA State Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

Dated: December 21, 2006

                        Richard W. Wieking, Clerk
                        By: R.B. Espinosa, Deputy Clerk

EXHIBIT C

May 30, 2007

Board of Parole Hearings

P.O. Box 4036

Sacramento, CA 95812-4036

Attn: Linn Austin, Lifer Appeals Unit

RE: FORMAL REQUEST TO BE DISCHARGED FROM PAROLE

Dear Ms. Austin:

My name is, JEROME THOMAS, II. On, December 28 2006, I was released from San Quentin State Prison after serving more than 24 YEARS, 10 MONTHS and 11 DAYS, on a 15-to-life sentence for second degree murder. At my parole hearing, on January 12th, 2006, the Hearing Panel set my term at 228 months (19 years) and awarded me 96 months post-conviction credit. Combined, the time that I spent in physical custody and the post conviction credits awarded by the Board exceeds 30 years.

I am making a formal request to be discharged from parole in accordance with In re Ernest Smith, H030201, and (Santa Clara County Super. Ct. No 75911), wherein the California Court of Appeal for the Sixth Appellate District upheld the Superior Court's decision ending Smith's parole on the grounds that he had completed his parole requirements under a scenario, that, with the exception of the amount of total credits awarded, is identical to mine. The Court's finding that time spent in prison beyond the set term must be applied against the parole period, entitles me to the same relief granted in the Smith case.

Please verify that the combined credits awarded by the Hearing Panel in my case exceeds both the term set and the five year parole period that I am required to serve. Upon verifying this information please notify me of the affective date of my discharged from parole.

Your immediate attention to this matter will be appreciated. Sincerely,

Jerome Thomas, II

7805 - San Ford St.
Oakland, Ca. 94605

Parole Agent
E. Wetzel
Oakland Parole Unit 3

# EXHIBIT D

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**BOARD OF PAROLE HEARINGS**
**LIFER APPEALS UNIT**
**P.O. BOX 4036**
**SACRAMENTO, CA 95812-4036**



June 12, 2007


Jerome Thomas, II, C-42636
7805 Sanford St.
Oakland, CA 94605



Dear Mr. Thomas

This is in response to you letter dated May 30, 2007, requesting to be discharged from your five-year parole period.

The Board of Parole Hearings records reflect you have previously submitted a letter concerning this issue. The Board responded to your letter through correspondence on May 3, 2007.

The Board's records reveal your commitment offense was dated October 6, 1979. You were received from Alameda County for the offense of 2nd degree murder on February 17, 1982, for which you received a sentence of 15 years to life. You were released on parole December 28, 2006. Per Title 15 § 2515 (d),

> "A life prisoner who was sentenced to state prison for an offense committed on or after January 1, 1979, is subject to a five-year parole period, unless the board sets a shorter period of parole. The maximum period of parole is seven years."

A discharge review shall be performed by the Board during the 37th month of continuous parole for parolees subject to a five-year parole period as provided in Section 2515 (d) (Title 15 § 2535 (b) (2)).

You have stated your case is very similar to the Ernest Smith case. Currently the *in re Ernest Smith* appellate decision is stayed pending review of the California Supreme Court on this case. The Board will not make a determination citing *in regards to in re Ernest Smith*. Your parole will not be considered for discharge until the appropriate time.

The issue addressed in your letter will not be responded to in future correspondence.

Sincerely,

*Linn Austen*

Linn Austen
Staff Services Manager I
Lifer Appeals Unit


vm

EXHIBIT E

(7/00)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA    Dept. No. 9

Date: **September 14, 2007**    Hon. LARRY GOODMAN, Judge    Nora Becerra, Dep.Clk.
Not Reported

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA | Counsel appearing for Plaintiff | No one appearing, Deputy District Attorney |
| Plaintiff | | |
| vs. | Counsel appearing for Defendant | No one appearing |
| **JEROME THOMAS** | | |
| | Probation Officer appearing | |
| Defendant | | Deputy |

NATURE OF PROCEEDINGS:    **PETITION FOR WRIT OF HABEAS CORPUS**    Case No. **69783**
PFN: **AHP767**
CEN: **9069664**

The defendant is not present.

Petition for writ of habeas corpus is denied. The Petition fails to state a prima facie case for relief. Penal Code Section 3000.1 clearly states that a person convicted of second degree murder, "if parole is granted, shall be for the remainder of the inmate's life".

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Minute Order re: Petition for Writ of Habeas Corpus for the case of the People vs. Thomas by placing a copy in an envelope addressed as shown below and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Jerome Thomas II
7805 Sanford Street
Oakland, CA 94605

Dated: September 14, 2007

Pat Sweeten, Executive Officer, Clerk of the
Superior Court of California, County of Alameda

By _____
***Nora Becerra, Deputy Clerk***

Warren Habeas m.o

EXHIBIT F

*EDMUND G. BROWN JR.*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*



455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 703-5500
Telephone: (415) 703-5709
Facsimile: (415) 703-5843
E-Mail: Scott.Mather@doj.ca.gov

November 13, 2007

Diana Herbert, Clerk of the Court
California Court of Appeal, First Appellate Dist., Div. Three
350 McAllister Street
San Francisco, CA 94102-4712

RE:    INFORMAL RESPONSE
         *In re Jerome Thomas II*, Case No. A119322

Dear Ms. Herbert:

## INTRODUCTION

This informal letter brief is submitted pursuant to your October 25, 2007 letter, in which you indicate that the Court has requested an opposition to the petition for writ of habeas corpus filed by Jerome Thomas II. Petitioner, a parolee within the constructive custody of the California Department of Corrections and Rehabilitation, claims that he should be discharged from his five-year parole period, which began on December 28, 2006 following a federal district court order vacating the Governor's decision finding petitioner unsuitable for parole.

In support of his claim, petitioner alleges that he is entitled to discharge from parole because when the Board found him suitable for parole in January 2006, it calculated a minimum base term of 19 years. Petitioner claims that the calculation of this base term transformed his indeterminate life sentence into a fixed 19-year term (which would have ended in approximately February 2001), after which his period of parole began such that he was entitled to have any subsequent period of incarceration credited against his five-year parole period. (Petn. at form p. 2 and pp. 2-3, 5.) Petitioner claims that the time he served in custody after this 19-year period should be credited against his five-year parole period, which would result in his discharge from parole. (*Ibid.*)

As more fully set forth below, petitioner's claim that the Board's calculation of a base term established a fixed, determinate sentence is erroneous. In short, the Board's calculation of a base term, which depends solely on factors related to the commitment offense, represents the shortest period of incarceration the life inmate must serve before being released once found suitable for parole. Regardless of this base term, the California Constitution provides that a convicted murderer does not become eligible for parole release until the completion of the parole consideration process, which is generally after the Governor's opportunity to make the final

November 13, 2007
Page 2

parole suitability determination. An inmate's parole period thus does not begin until his actual release to parole, which is consistent with the Legislature's statutory dictate in the Penal Code providing that parole is critical to a convicted murderer's re-integration into society and in the interest of public safety.

Here, petitioner was released to parole on December 28, 2006. (Petn. at p. 2 and Ex. C.) As set forth below, petitioner's parole period runs from his parole release date, not from the 19-year base term calculated by the Board. Accordingly, because petitioner is still presently in the first year of his parole period and thus cannot demonstrate that he is overdue for discharge from parole, his petition should be denied.

### ARGUMENT

### THE PERIOD OF PAROLE FOR AN INDETERMINATELY SENTENCED LIFE INMATE DOES NOT BEGIN TO RUN UPON THE EXPIRATION OF THE BOARD'S CALCULATED BASE TERM, BUT RATHER ONLY ONCE THE PAROLE CONSIDERATION PROCESS HAS BEEN COMPLETED AND INMATE HAS BEEN RELEASED TO PAROLE.

Petitioner's sole claim is that his five-year parole period did not begin with his parole release in December 2006, but rather began in approximately February 2001, the date by which he had served the 19-year base term calculated by the Board. (See Petn. at form p. 2 and pp. 2-3, 5, 7.) Petitioner's argument, however, is contrary to California's statutory and regulatory parole provisions.

Regardless of the length of imprisonment, the Penal Code and applicable regulations dictate that the Board shall not set a release date if it finds the inmate unsuitable for parole. (Pen. Code, § 3041; Cal. Code Regs., tit. 15, §§ 2281, subd. (a) & 2402, subd. (a).) Conversely, when the Board finds a life-term inmate suitable for parole, it calculates a base term under its regulatory sentencing matrices, which set a prescribed range of years based solely on factors related to the commitment offense, such as the extent of the inmate's prior relationship with the victim and the severity and causal connection between the inmate's acts and the victim's death. (Cal. Code Regs., tit. 15, §§ 2282, 2403.) Subsequently, with regard to convicted murderers such as petitioner, the Governor has the authority under the California Constitution to review and affirm, modify, or reverse the Board's decision. (Cal. Const., art. V, § 8, subd. (b); *In re Rosenkrantz* (2002) 29 Cal.4th 616, 651 fn. 9 [Governor's review "alters the method employed in determining whether parole should be granted or denied" by making the Governor, rather than the Board, the final authority].) Thus, a convicted murderer is not eligible to begin his period of parole until after the opportunity for gubernatorial review of the Board's decision has elapsed and inmate has served at least the base term established by the Board. (*Ibid.*)

Moreover, contrary to petitioner's interpretation of the parole statutes, the statutory and regulatory scheme contemplates that the actual parole release date in many circumstances will

exceed the base date. Specifically, Penal Code section 3041, subdivision (b), provides that an inmate shall not be released to parole if the timing and gravity of current or past convicted offenses is "such that consideration of the public safety requires a more lengthy period of incarceration for this individual." Similarly, the Board's regulations provide that the Board must first determine a life-term inmate's suitability for parole and that "[r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." (Cal. Code Regs., tit. 15, § 2402, subd. (a).) Based on these statutory and regulatory provisions, a life-term inmate convicted of murder, such as petitioner, is not entitled to release once he has met the base term, but rather only upon the Board's and Governor's determination that he is suitable for parole, as the California Supreme Court determined in *In re Dannenberg* (2004) 34 Cal.4th 1061.

Petitioner's fundamental error is his premise that, once the Board calculates a base term, an indeterminately sentenced inmate's sentence becomes determinate. As a result, petitioner erroneously cites in support of his claim Penal Code section 1170 (Petn. at p. 8), which states that the court shall advise a determinately sentenced inmate that he shall serve a period of parole unless his time in custody exceeds the "total sentence, including confinement time and the period of parole." (Pen. Code, § 1170, subd. (a)(3).) But the application of this statute to petitioner's indeterminate life-term sentence would be erroneous. First, by its express terms, Penal Code section 1170 applies only to determinately sentenced inmates. Thus, the specific language of Penal Code section 1170 does not apply to petitioner because he is not a determinately sentenced inmate. Indeed, the title of section 1170 is "determinate sentencing," and petitioner was thus not sentenced under this statute. Second, this statute does not define how an inmate's sentence is determined. It merely directs the court to advise an inmate that he will serve parole unless his time in custody exceeds his sentence. Such an advisement would not apply to an inmate, such as petitioner, who is serving an indeterminate term the maximum sentence for which is life.

Similarly, petitioner mistakenly relies on the provisions of Penal Code section 2900.5, governing the application of pre-sentence credits in calculating the term of imprisonment. But those provisions—although applicable to a fixed, determinate term—also do not apply to an inmate sentenced to an indeterminate life-maximum term.

In contrast, the Legislature has specifically recognized the importance of the requirement that any inmate released from prison completes the requisite parole period. The Legislature has determined that parole is "critical to successful reintegration of the offender into society and to positive citizenship," and that it "is in the interest of public safety . . . [in order to] assist parolees in the transition between imprisonment and discharge." (Pen. Code, § 3000.) The Board's regulations setting an inmate's minimum base term, however, address only specified circumstances of the commitment offense; they do not address other factors impacting public safety, such as the inmate's pre-commitment factors (including criminal history) or his conduct while in prison. (Cal. Code Regs., tit. 15, §§ 2282, 2403.) As petitioner would have it, these relevant factors (*id.* at §§ 2281, 2402) are not allowed to play any role in lengthening an inmate's term. Rather, under petitioner's construction of the parole provisions, the worst offenders, and those inmates who require the greatest amount of time in prison before being found suitable for

November 13, 2007
Page 4

parole, are the inmates who shall serve the shortest period of parole.

Furthermore, petitioner's argument would not just impinge on the Legislative mandate for a period of parole, it would eliminate parole for nearly all murders convicted before the statutory amendment in 1982 establishing a life-term of parole for murderers.[1] For instance, inmates convicted of second-degree murder before 1982 will likely not have to serve *any* period of parole given that the maximum base term for this offense is 21 years. (Cal. Code Regs., tit. 15 §§ 2283, 2402.) Further, even as to first degree murder, all inmates convicted before November 8, 1978, will have already surpassed the maximum 22-year base term, while many inmates convicted between this date and 1982 will also have surpassed their base term, which ranges from 25 years to 33 years. (*Ibid.*) As a result, petitioner's reasoning would abrogate parole for nearly all second degree murderers convicted before 1982 and reduce, if not extinguish, the period of parole for most pre-1982 first degree murderers. Ironically, inmates convicted of first degree murder found suitable for parole latest would serve the shortest, if any, parole period.[2]

The case law cited by petitioner also does not support his conclusion that an indeterminately sentenced inmate becomes determinately sentenced when the Board calculates the base term. In *In re Hogan* (1986) 187 Cal.App.3d 819, the court examined the extent to which an inmate with an indeterminate life-maximum term was a "life prisoner." The court stated that in setting a release date regarding an indeterminate sentence, the parole board performed "the same function as does the trial court in ordering a determinate sentence—it fixes a term of definite duration." (*Id.* at p. 824.) The court then determined that the prisoner in that case would remain a life prisoner until the Board fixed a parole release date. (*Id.* at pp. 825-826.) The *Hogan* court did not address the situation in this case, however, where the inmate's actual parole release date at the conclusion of the parole suitability process is beyond the date the Board calculated under its sentencing matrices.

In fact, the *Hogan* court acknowledged that a life prisoner given a parole release date by the Board is not identically situated to a prisoner whose term is fixed by the court. (*Id.* at pp. 826-827.) The difference is that the life prisoner's period of confinement may be lawfully extended beyond the release date until such time as he is found suitable for parole by the Board and the Governor's opportunity to review that decision has elapsed. (Cal. Const., art. V, section 8(b); Pen. Code, § 3041; *Dannenberg, supra,* 34 Cal.4th at pp. 1082-1084.) Indeed, the court's statement in *Hogan* that the Board serves the same function as a trial court was made with regard

---

1. In 1982, the Legislature amended the Penal Code to provide that inmates convicted of murder would remain on parole for life subject to possible discharge after a minimum of five years (a seven year period applies to first degree murder). (Pen Code, § 3000.1) Inmates not convicted of murder remain subject to the previously prescribed parole terms.

2. Further, while there is a wide range of base terms for non-murder offenses, the longest base term is the maximum term of 17 years for kidnaping for robbery or ransom cases (Cal. Code Regs., tit. 15, §§ 2282, 2403), thereby indicating that all life inmates convicted of a non-murder offense before 1990 will have already surpassed their base term.

November 13, 2007
Page 5

to "setting the release date" for an indeterminate inmate, which in the present context would refer to petitioner's actual release on December 28, 2006, as opposed to the base term set under the Board's regulations given that the base term does not establish the actual parole release date. Accordingly, petitioner improperly relies on *Hogan* in support of his claim that the Board's calculation of a base term converts an indeterminate sentence to a determinate one.

Petitioner's reliance on *In re Ballard* (1981) Cal.App.3d 647 is also misplaced. In *Ballard*, the court held that Ballard, who had been incarcerated beyond the term of his sentence, was entitled to have the excess time in custody deducted from his parole period. (*Id.* at pp. 648-650.) But *Ballard* is distinguishable because Ballard was sentenced to a term that specified a maximum period of incarceration, which should not have been exceeded under any circumstances. (*Id.* at pp. 649-650.) The indeterminate sentence here contained no such maximum period of incarceration.

Moreover, the public policy favoring parole must be followed even where the inmate has arguably retained excessively in custody. (See, e.g., *In re Jantz* (1985) 162 Cal.App.3d 412, 416 [holding that even though petitioner had been resentenced to a lesser term after his initial conviction was reversed on appeal, he was not entitled to be discharged from parole because such a finding would be "unreasonable when reviewed in light of the entire statutory scheme of which it is a part and the express legislative declaration of the necessity of parole"]; *In re Chambliss* (1981) 119 Cal.App.3d 199, 203 [holding that the public policy statements by the Legislature in Penal Code section 3000 prevented the inmate from being relieved of serving parole even if the plea agreement had been violated because the inmate was never informed he would be retained on parole after his prison term ended].) For instance, in *People v. Jefferson* (1999) 21 Cal.4th 86, the Supreme Court specifically determined that, under the current sentencing provisions, the "period of parole is not part of a defendant's prison term." (*Id.* at pp. 95-96.)[3/] In *Jefferson*, this Court addressed this issue in the context of determining how to interpret the phrase "minimum term for an indeterminate term, as it is used in [Penal Code] section 667(e)(1)." (*Id.* at p. 94.) While *Jefferson* addressed a different issue regarding indeterminate terms than at issue in this case, it reinforced the principle that a life-inmate's period of parole cannot be construed as beginning while he remains in custody. (*Jefferson*, at pp. 95-96; see also *In re Wilson* (1981) 30 Cal.3d 438, 442 [determining that based on public policy statements in Penal Code section 3000, "[t]he parole period [is now] imposed separately from the term of imprisonment"]; *In re Carabes* (1983) 144 Cal.App.3d 927, 930 [parole is not "an element affecting when a prisoner may be released from prison but is rather a condition upon and in addition to imprisonment, affecting his life after he is released"].)

───────────────

3. While the parole period was previously considered part of the sentence, the sentencing laws enacted in 1977 changed this aspect of parole. (*Ibid.*) Under the post-1977 law, "the prison 'term' is the actual time served in prison before release on parole, and the day of release on parole marks the end of the prison term. . . . The period of parole is not part of a defendant's prison term, and the length of time an offender may remain on parole or may be incarcerated for a parole violation is measured by statutory provisions setting the maximum parole period." (*Ibid.*)

November 13, 2007
Page 6

In summary, petitioner's claim that the Board's calculation of a base term establishes a fixed, determinate sentence after which his parole period began is contrary to the applicable statutory and regulatory provisions, case law, and the Legislature's statutory mandate that inmates serve the prescribed period of parole. Petitioner's period of parole thus did not begin to run in February 2001 following his completion of the 19-year minimum base term subsequently calculated by the Board in 2006, but rather upon his actual release to parole in December 2006. Accordingly, respondent respectfully requests that the petition be denied.

Sincerely,

SCOTT C. MATHER
Deputy Attorney General
State Bar No. 190912

For      EDMUND G. BROWN JR.
         Attorney General

SCM:

20111647.wpd

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **THOMAS, JEROME II In re**
No.:   **A119322**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **November 13, 2007**, I served the attached

### INFORMAL RESPONSE

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Jerome Thomas II, C-42636**          **Alameda County Superior Court**
**7805 Sanford Street**                        **Clerk of the Court**
**Oakland, CA 94605**                          **1225 Fallon Street**
**In Pro Per**                                        **Oakland, CA 94612**

**The Honorable Thomas Orloff**          **First District Appellate Project**
**District Attorney**                            **730 Harrison Street, Suite 201**
**ALAMEDA COUNTY**                          **San Francisco, CA 94107-1271**
**1225 Fallon Street, Room 900**
**Oakland, CA 94612**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **November 13, 2007**, at San Francisco, California.

| J. Palomino | J. Palomino |
| --- | --- |
| Declarant | Signature |

20113223.wpd

EXHIBIT G



# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

### DIVISION THREE

JEROME THOMAS II,

on Habeas Corpus.

A119322

(Alameda County
Super. Ct. No. 69783)

```
┌─────────────────────────────────────┐
│              FILED                   │
│ Court of Appeal First Appellate District │
│         DEC 06 2007                  │
│      Diana Herbert, Clerk            │
│ By_____Deputy Clerk       │
└─────────────────────────────────────┘
```

THE COURT:*

The petition for a writ of habeas corpus is denied.

Dated:  DEC 0 6 2007

_____ P.J.

---

* McGuiness, P.J., Siggins, J., & Horner, J. (Judge of the Alameda Sup. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), participating.

# EXHIBIT H

S160091

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re JEROME THOMAS II on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
**FILED**

JUL **1 6** 2008

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**
_____
Chief Justice

Jerome Thomas, I
7805 San Ford St.
Oakland, Ca. 94605

FIRST CLASS

FIRST CLASS

United State District Court
Northern District of California
450 - Golden Gate Ave
Att. Clerk's Office
94102

U.S. POSTAGE
SAN FRANCISCO CA
94102
AUG 13 08
AMOUNT
$3.21
0002 7685-12
0000
94102
UNITED STATES
POSTAL SERVICE